[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 131 
OPINION
Violet R. and James R., Sr. (together the parents), appeal judgments declaring their minor children James R., Jr., Wesley and Violet III (collectively the minors) dependents of the juvenile court under Welfare and Institutions Code[1]
section 300, subdivision (b) and placing the minors with the parents conditioned on Violet having supervised contact with them. The parents challenge the sufficiency of the evidence to support the court's jurisdictional findings and dispositional orders. We conclude the evidence is insufficient to support the court's findings that the minors were at substantial risk of suffering serious physical harm or illness as a result of Violet's mental illness or substance abuse, or that James was unable to protect them. Accordingly, we reverse the judgments.
 FACTUAL AND PROCEDURAL BACKGROUND
In July 2008 Violet was hospitalized after she consumed alcohol and took prescription ibuprofen while caring for the minors. Violet explained she took *Page 132 
eight ibuprofen with a few beers, but was not intentionally trying to harm herself. The hospital social worker reported Violet had a history of suicide attempts. The San Diego County Health and Human Services Agency (the Agency) filed petitions in the juvenile court under section 300, subdivision (b), alleging four-year-old James, Jr., three-year-old Wesley, and one-year-old Violet III were at substantial risk of harm because Violet had a mental illness, developmental disability or substance abuse problem, and James was unable to protect them.
According to a detention report, Violet had been treated for depression in the past and had not complied with recommendations of health care providers. James shared parenting responsibilities with Violet, and the parents had supportive family members who assisted with childcare. The court detained the minors with the parents conditioned on another adult being present in the home when the minors were in Violet's care. The court ordered the parents to participate in voluntary services.
In a report prepared for the jurisdiction and disposition hearing, Violet explained the incident that led to her recent hospitalization. She said she had built up a tolerance to Tylenol (acetaminophen), and needed to take up to eight pills at a time for relief. She mistakenly believed she could take eight ibuprofen, but then realized she was having an adverse reaction and called for help. Violet admitted having postpartum depression and suicidal thoughts in the past. She stated she was hospitalized "five to six, maybe seven" times for mental health issues. She had not used illegal drugs since 2002 and had not had a drink of alcohol in a while. Violet voluntarily initiated services before the Agency intervened, including attending outpatient rehabilitation classes and Alcoholics Anonymous meetings, participating in individual counseling and enrolling in an online parenting course.
The Agency reported the parents did not believe Violet's mental health or possible substance abuse problem impaired her ability to care for the minors. It acknowledged both parents were devoted to the minors, were bonded with them and were meeting their medical, educational and developmental needs. The family had stable income and housing. The Agency believed the minors were safe in James's care as long as he cooperated and engaged in services. However, it remained concerned about the minors' safety in Violet's sole care until she had a psychological evaluation, followed treatment advice and maintained her sobriety. James was willing to participate in services and do whatever the Agency asked of him. *Page 133 
At a contested jurisdiction and disposition hearing, David Debus, Ph.D., testified Violet had 11 psychotherapy sessions with him. Dr. Debus diagnosed Violet's condition as attention deficit disorder, mixed type, which caused her to have a chaotic home life and required close attention to daily activities. He concluded Violet did not have bipolar disorder and she was not suicidal. In his opinion Violet did not pose a risk to her children and she was not a danger to herself or others.
Social worker Kelly Monge testified she visited the parents' home the day after Violet was taken to the hospital. Her assessment stated James monitored the minors' welfare and he had support from extended family members. Monge was not concerned about the minors' safety.
When Monge interviewed Violet at home, many family members were present. Violet was drinking a beer and appeared intoxicated. Violet explained the alcohol and ibuprofen mix was a mistake, and she did not intend to harm herself. The minors, as well as several family members, were at home when this happened. The hospital staff did not assess Violet as having suicide ideation. However, Violet had been hospitalized on other occasions for attempting to harm herself.
Monge further testified the parents communicated well with each other, had an organized home and religious support, and loved their children. The parents were very attentive to the minors' academic and medical needs. The minors were not malnourished, had no unexplained bruises and did not appear to be afraid of Violet. Violet was reluctant to have the Agency involved with providing services and she would not authorize a release of medical information. When the parents declined a voluntary plan, the Agency decided to file a dependency petition.
Because the parents received help from extended family members, the Agency was not asking the court to remove the minors from parental custody. Nevertheless, Monge remained concerned about Violet's mental health and alcohol use. Monge recommended a safety plan that included prohibiting Violet from being alone with the minors.
Social worker Nicol Tarvin testified she received the case after the dependency petition was filed. Tarvin recommended the court assume jurisdiction of the minors. She acknowledged Violet had been consistently participating in therapy and substance abuse treatment for three months. The minors were in school or day care, alleviating some of the risk. Violet had *Page 134 
been struggling with mental health issues for several years and was trying to stabilize, but she did not comply with hospital recommendations. James did not have a clear understanding of Violet's mental health issues or how he was enabling her, and he denied that Violet had a substance abuse problem. Tarvin believed the minors were safe with James, who ensured their needs were met. She also believed James would intervene to protect the minors.
Tarvin assessed the risk to the minors as moderate to high without juvenile court intervention. She was concerned that James might leave the minors with Violet while he worked and Violet might drink alcohol or use drugs while caring for the minors. If Violet did not follow through with treatment, obtain proper help and learn to cope with her problems, she might want to hurt herself and the minors could possibly be exposed to this conduct. Although Tarvin was concerned about Violet's use of alcohol and drugs, she had never seen Violet intoxicated. Tarvin had no confidence in Dr. Debus's diagnosis of Violet's mental health status. Violet's distrust of the Agency and others made it difficult to assess the quality and level of risk in this case.
After considering the evidence and argument of counsel, the court amended the petitions to conform to proof and sustained the amended allegations of the petitions.[2] The court declared the minors dependents and placed them with the parents, conditioned on Violet not being alone with the minors.
 DISCUSSION
The parents challenge the sufficiency of the evidence to support the court's jurisdictional findings. Violet asserts the Agency did not meet its burden of showing the minors were at substantial risk of serious physical harm as a result of her mental illness or substance abuse. James joins in this argument and further asserts there was no evidence he was unable to protect and supervise the minors.
 A
In reviewing the sufficiency of the evidence on appeal we consider the entire record to determine whether substantial evidence supports the court's *Page 135 
findings. (In re Savannah M. (2005)131 Cal.App.4th 1387, 1393 [32 Cal.Rptr.3d 526].) We do not pass on the credibility of witnesses, attempt to resolve conflicts in the evidence or weigh the evidence. Rather, we draw all reasonable inferences in support of the findings, view the record favorably to the juvenile court's order and affirm the order even if other evidence supports a contrary finding. (In re Casey D.
(1999) 70 Cal.App.4th 38, 52-53 [82 Cal.Rptr.2d 426]; In reBaby Boy L. (1994) 24 Cal.App.4th 596, 610
[29 Cal.Rptr.2d 654].)
Substantial evidence, however, is not synonymous with any evidence. (In re Savannah M., supra,131 Cal.App.4th at p. 1393.) "A decision supported by a mere scintilla of evidence need not be affirmed on appeal." (Ibid.) Although substantial evidence may consist of inferences, those inferences must be products of logic and reason and must be based on the evidence. Inferences that are the result of mere speculation or conjecture cannot support a finding. The ultimate test is whether a reasonable trier of fact would make the challenged ruling considering the whole record. (Id. at pp. 1393-1394; accord, In re David M. (2005)134 Cal.App.4th 822, 828 [36 Cal.Rptr.3d 411].)
 B
Section 300, subdivision (b) provides a basis for juvenile court jurisdiction if the child has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness caused by the parent's inability to provide regular care for the child because of the parent's mental illness, developmental disability or substance abuse. A jurisdictional finding under section 300, subdivision (b) requires: "`(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) "serious physical harm or illness" to the child, or a "substantial risk" of such harm or illness.' (Inre Rocco M. [(1991)] 1 Cal.App.4th [814,] 820 [2 Cal.Rptr.2d 429].)" (In re Savannah M., supra,131 Cal.App.4th at p. 1396; see also In re David M., supra,134 Cal.App.4th at p. 829.) The third element "effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur)." (In re Savannah M.,supra, at p. 1396.)
Although evidence of past conduct may be probative of current conditions, the court must determine "whether circumstancesat the time of the hearing subject the minor to the defined risk of harm." (In re Rocco M., supra, *Page 136 1 Cal.App.4th at p. 824; see In re Janet T. (2001)93 Cal.App.4th 377, 388 [113 Cal.Rptr.2d 163].) Evidence of past conduct, without more, is insufficient to support a jurisdictional finding under section 300. There must be some reason beyond mere speculation to believe the alleged conduct will recur. (In re Savannah M., supra,131 Cal.App.4th at p. 1394.)
 C
Here, the evidence showed the minors came to the Agency's attention when Violet had a negative reaction to taking ibuprofen and drinking beer. However, there was no evidence of actual harm to the minors from the conduct of either parent and no showing the parents' conduct created a substantial risk of serious harm to the minors. Further, nothing in the record supported a finding the parents were unable to provide regular care for the minors as a result of Violet's mental health problems or continued use of alcohol.
Although Violet had a history of mental instability, she had not abused or neglected the minors in the past. "Without the history of abuse and neglect, it is nearly impossible to determine whether [the minors are] at risk of suffering from the same abuse and neglect." (In re Ricardo L. (2003)109 Cal.App.4th 552, 567 [135 Cal.Rptr.2d 72].) Moreover, the Agency had the "burden of showing specifically how the minors have been or will be harmed and harm may not be presumed from the mere fact of mental illness of a parent." (In re Matthew S.
(1996) 41 Cal.App.4th 1311, 1318 [49 Cal.Rptr.2d 139]; seeIn re Jamie M. (1982) 134 Cal.App.3d 530, 542
[184 Cal.Rptr. 778].)
Any causal link between Violet's mental state and future harm to the minors was speculative. Social worker Tarvin testified the risk to the minors was moderate to high because she did not know whether Violet was emotion-ally stable. There was no evidence Violet had suicidal ideation after the birth of her children and there was never a determination Violet was a danger to herself or others. Instead, Tarvin postulated that if Violet did not follow through with treatment she might want to hurt herself, with the possibility of exposing the minors to her suicide attempt. Although these and other potential harms could be identified, they were insufficient to support a finding the minors were at substantial risk of future harm. (In reDavid M., supra, 134 Cal.App.4th at p. 830 [record lacked evidence of a specific, defined risk of harm to minors resulting from parents' mental illness or substance abuse]; In reSteve W. (1990) 217 Cal.App.3d 10, 22 [265 Cal.Rptr. 650] [speculation *Page 137 
about possible future conduct cannot support a finding of dependency].) Perceptions of risk, rather than actual evidence of risk, do not suffice as substantial evidence. (Nahid H. v.Superior Court (1997) 53 Cal.App.4th 1051, 1070
[62 Cal.Rptr.2d 281].)
The Agency also did not show with specificity how the minors were or would be harmed by Violet's alleged substance abuse. Tarvin testified that if Violet had a substance abuse problem or continued to drink alcohol she would not be capable of caring for the minors. However, there was no evidence Violet used illegal drugs after the minors were born and the Agency's report refers only to "possible substance abuse." Although there was some evidence Violet drank beer, the record does not show she was regularly intoxicated, rendering her incapable of providing regular care for the minors or posing a risk to them. The mere possibility of alcohol abuse, coupled with the absence of causation, is insufficient to support a finding the minors are at risk of harm within the meaning of section 300, subdivision (b).
Further, the uncontradicted evidence showed James was able to protect and supervise the minors. Tarvin testified the minors were safe in James's care, and she believed James would intervene to protect them. He was devoted to the minors, shared a bond with them and met their needs. He had the support of extended family members who assisted with childcare. Any concern that James might leave the minors alone with Violet while she drank or attempted to harm herself was not based on the evidence or on any reasonable inferences from the evidence.[3]
The evidence showed the minors were healthy, well cared for and never unsupervised. They were attending school or day care while James worked during the day, a factor Tarvin admitted alleviated some of her perceived risk. The parents communicated well with each other, had an organized home and had the support of extended family members. The parents loved their children and were meeting their medical and academic needs. There was no evidence of a specific, defined risk of harm to the minors resulting from Violet's mental illness or substance abuse, and no evidence James did not or could not protect them. Substantial evidence does not support the court's jurisdictional findings that the minors are children described in section 300, subdivision (b).
Because of our conclusion that the jurisdictional findings must be reversed, the dispositional orders must also be reversed. (In re David M., supra, 134 Cal.App.4th at p. 833.) *Page 138 
 DISPOSITION
The judgments are reversed.
McIntyre, J., and Irion, J., concurred.
[1] Statutory references are to the Welfare and Institutions Code.
[2] The amended petitions provide: "`On or about and between July 2, 2008, to the present, the mother had a mental illness as evidenced by the fact that the mother was hospitalized on July 2, 2008 for a 72-hour hold, as she combined an excess of ibuprofen and alcohol. The mother has a history of at least five prior psychiatric hospitalizations and of suicidal thoughts, including thoughts of hanging herself. [¶] . . . [¶] The mother . . . has been diagnosed with ADD that impairs her judgment. (¶] . . . [¶] The mother also continues to drink alcohol, . . . all of which renders her incapable of providing regular care for said child, and said child's father has failed or is unable to protect and supervise said child, and said child is in need of protection of . . . the juvenile court.'"
[3] Because of the absence of evidence that Violet's drinking or mental health issues interfered with her ability to properly parent the minors, it was not unreasonable for James to deny Violet had a substance abuse problem or to believe the Agency's intervention was unnecessary. *Page 139