Filed 2/10/14  In re Michael T. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re MICHAEL T. et al., Persons Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D064538 |
| Plaintiff and Respondent, | (Super. Ct. No. SJ11674A-B) |
| v. | |
| BONNIE T., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Garry G. Haehnle, Judge.  Affirmed.

Neil R. Trop, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Erica R. Cortez, Deputy County Counsel, for Plaintiff and Respondent.

Bonnie T. appeals the continuation of her children's dependency proceedings under Welfare and Institutions Code section 364,[1] which governs review hearings for dependent children who remain in their parent's care. She contends there is insufficient evidence to support a finding that conditions still exist which would justify initial assumption of jurisdiction under section 300 or that those conditions are likely to exist if supervision is withdrawn. We affirm the orders.

FACTUAL AND PROCEDURAL BACKGROUND

Bonnie T. is the mother of Michael T. and Makayla O. (together, children), now 17 and six years old, respectively. Bonnie has a history of substance abuse and mental health problems, including auditory hallucinations, and child protective issues. She received voluntary services for a short time in 1992 and 1993 for emotional and physical abuse of her two older children. In 1999, the San Diego County Health and Human Services Agency (Agency) substantiated a referral alleging general neglect of Michael. Michael was a dependent of the juvenile court from 2006 to 2008. In 2011, a court required Bonnie to attend 12-step meetings and complete a 52-week parenting education program as conditions of probation on charges arising from driving while intoxicated with Makayla in the car.

In May 2012, the Agency filed a petition alleging Michael and Makayla had suffered, or were at substantial risk of suffering, serious physical harm or illness due to Bonnie's inability to provide regular care to them. The petition alleged Bonnie was suffering from major depressive disorder with psychotic features and generalized anxiety disorder, and she was behaving erratically and violently with the children. (§ 300, subd. (b).)

---

[1] Further statutory references are to the Welfare and Institutions Code.

The early details of the case are described in this court's nonpublished opinion *In re Michael T.* (Jan. 25, 2013, D062326). Briefly, the Agency detained the children in protective custody following an incident of domestic violence between Bonnie and 15-year-old Michael. Makayla was present. Bonnie was yelling and screaming at Michael and breaking household items. Police officers said Bonnie was uncooperative, confrontational, confused, and appeared to be intoxicated. Makayla was afraid of Bonnie. Michael said he was tired of the family's stressful living conditions and wanted to leave home.

After sustaining the jurisdictional allegations, the juvenile court removed the children from Bonnie's custody and authorized placement with their adult sister. Bonnie completed a six-week parenting class, began individual therapy, and received psychological and psychiatric assessments, including medication management. She complied with random substance abuse testing, with negative results for substance abuse. The social worker reported that Bonnie was making "steady progress" with all her treatment services. In October 2012, the children began a trial visit with their mother and were placed with her 60 days later.

In January 2013, at a review hearing under section 364, the juvenile court found, by clear and convincing evidence, the conditions that justified the initial assumption of jurisdiction were likely to exist if supervision was withdrawn. The children continued their placement with Bonnie under a plan of family maintenance services.

On August 13, 2013, the juvenile court held a contested hearing on Bonnie's request to terminate dependency jurisdiction under section 364. The social worker reported that child protective services investigated allegations that Bonnie was neglecting Makayla during the reporting period. In February, the Agency received a report alleging Makayla was home

3

alone, Bonnie was using drugs and alcohol, and Makayla was not attending school. Bonnie refused to drug test that day. Michael and Makayla stayed with family members for a week until Bonnie stabilized. In May, police found Makayla and Bonnie's two-year-old granddaughter in a parking lot where they had been playing for approximately 20 to 30 minutes. Police escorted them back to Bonnie's apartment. Bonnie was sleeping. She submitted to a drug test that day, which was negative. Child protective services substantiated the referral for general neglect.

At a team decision meeting with social workers and family members, Bonnie agreed to accept in-home parenting support services, take Makayla to therapy to address Makayla's behavioral issues, take her medication as prescribed, and resume individual therapy.

The social worker reported that Michael was doing very well. He had a well-integrated peer support network with close friends. At high school, he was involved in sports and student leadership. Michael's goals were to raise his grade point average to 4.0 and find a summer job.

Makayla had developed some behavioral issues, including not listening to her mother, but overall was doing well. She was showing signs of emotional stress and trauma that were related to father's death in 2011. Those issues were to be addressed in play therapy. Bonnie withdrew Makayla from a transitional kindergarten program, saying it was too far away and she did not approve of Makayla's teacher. Makayla was scheduled to start kindergarten at another school in July.

Bonnie's therapist said Bonnie was displaying some tangential thoughts that had interfered with the process of creating a mental health safety plan. She eventually completed

a plan. However, Bonnie no longer appeared to be motivated. She missed therapy appointments, said she had met her therapeutic goals, and asked when she would be finished with therapy. Bonnie missed two out of five appointments with in-home family support services.

On the morning of August 8, the Agency received a referral alleging that Bonnie was yelling and cursing at her children, and playing music very loudly. When police arrived at her apartment at 7:15 a.m., Makayla was smiling and dressed for school. After the police left, Bonnie sought out a neighbor and had a verbal altercation with her. The police were called back. They detained Bonnie on probable cause she was a danger to herself or others. (§ 5150.) She was released the next morning. Family members cared for the children overnight.

Michael denied that Bonnie was cursing at him or Makayla. He explained she was yelling, "I hate you, get out of my head" to herself. According to Michael, Bonnie was taking her medications but seemed unstable approximately once a month. Makayla said her mother was at the doctor "[b]ecause all the doctors took the voices out of her head." According to a recent report by Bonnie's therapist, Bonnie said she heard voices "100[ percent] of the time."

The social worker said the only protective issue remaining in the case was the status of Bonnie's mental health. The family followed through with their safety plan. However, the social worker expressed serious concerns about Bonnie's ability to maintain her stability without support services.

5

The juvenile court accepted Bonnie's stipulated testimony that she had taken Makayla to therapy twice, put secure locks on her doors, and was looking for a new apartment in a gated community. Bonnie put Michael's and Makayla's interests before her own. With respect to the most recent incident, a new neighbor called the police on her.

The juvenile court continued the children's dependency cases under section 364, finding that placement with Bonnie was appropriate and that reasonable services were being provided to the family. The court stated it was necessary to continue jurisdiction because Bonnie was still experiencing auditory hallucinations and needed to continue therapy, and Makayla had not completed her therapy.

## DISCUSSION

Bonnie acknowledges that her mental health status is the fundamental issue on appeal. She contends harm to her children cannot be presumed from the mere fact she has a mental illness. She contends there is not sufficient evidence to sustain the juvenile court's finding and orders without a showing linking her mental health status to an inability to adequately parent her children. Bonnie argues the evidence shows that her relationships with her children were improved; she promptly responded to the Agency's concerns about her stability and ability to safely care for Makayla; and she had an extended support system through her family. Bonnie maintains there is no evidence to show she was drinking or using drugs. She further contends the Agency did not recognize that Makayla needed therapeutic support until May 2013, a year after the initial assumption of jurisdiction, and juvenile court supervision was not required to ensure that Makayla received appropriate therapeutic services.

6

Section 364, subdivision (c) provides, in pertinent part:

> "After hearing any evidence presented by the social worker, the parent, the guardian, or the child, the court shall determine whether continued supervision is necessary. The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if supervision is withdrawn."

We review the juvenile court's decision to continue jurisdiction under section 364 for substantial evidence. (*In re N.S.* (2002) 97 Cal.App.4th 167, 172.) Evidence sufficient to support the juvenile court's finding must be reasonable in nature, credible, and of solid value, and it must constitute substantial proof of the essential elements that the law requires in a particular case. (*Ibid.*)

Bonnie's reliance on *In re James R.* (2009) 176 Cal.App.4th 129 (*James R.*) and *In re Matthew S.* (1996) 41 Cal.App.4th 1311 (*Matthew S.*) do not assist her. The circumstances of the mentally ill parent in each of these cases are not similar to her circumstances. In *James R.*, this court found there was insufficient evidence to sustain dependency jurisdiction under section 300 where the mentally ill parent did not have any history of abusing or neglecting her children, who were healthy, well cared for and never unsupervised. (*James R.*, at p. 137.) There was no evidence of a specified, defined risk of harm to the children resulting from the parent's mental illness or alcohol use. (*Ibid.*) In *Matthew S.*, although the reviewing court determined there was insufficient evidence to sustain a jurisdictional finding under section 300, subdivision (b), it upheld a finding under section 300, subdivision (c), concluding there was substantial evidence to show that the child was suffering, or was at substantial risk of suffering, serious emotional damage as a result of his mother's mental

7

illness, which manifested in delusions about her son's physical health. (*Matthew S.*, at pp. 1319-1320.)

In contrast to the parents in *James R.* and *Matthew S.*, Bonnie's mental illness manifested in volatile and sometimes violent behavior, necessitating repeated intervention by child protective services and law enforcement. She had a history of substance abuse dating to 1989. Child protective services was involved with Bonnie's family on and off for more than 20 years, and intervened with formal dependency proceedings twice in six years. Each dependency proceeding was initiated as a result of Bonnie's aggressive behavior toward others in the presence of her children. Her volatility was often triggered by alcohol use. Bonnie was involved in a criminal court proceeding when her drinking and driving created a substantial risk of serious harm to Makayla. Bonnie had verbal and physical altercations with Michael in Makayla's presence.

Despite her participation in parenting education programs and other services, the Agency received a referral in February 2013 alleging that Bonnie was using drugs or alcohol and was not providing regular care to Makayla. Bonnie refused to drug test that day. Family members stepped in to care for the children until Bonnie appeared to be more stable. Less than three months later, Bonnie fell asleep while caring for five-year-old Makayla and a two-year-old granddaughter, who were discovered playing in a parking lot. The Agency substantiated a referral against Bonnie for general neglect of Makayla. The Agency then implemented additional in-home services to help the family. Bonnie missed two out of five appointments with the service provider.

Shortly before the review hearing, Bonnie had a verbal altercation with a neighbor she accused of reporting her to child protective services. While Bonnie may not have been yelling at the children, as the reporter believed, the record shows she was yelling at the voices in her head. The record supports a finding that Bonnie's mental health condition, although improved, was not stabilized. In May 2012, an evaluating psychologist said although Bonnie reported some hallucinations, they appeared to be under control with medication. Shortly before the August 2013 review hearing, Bonnie told her therapist she was hearing voices "100[ percent] of the time." The social worker recommended another six months of services to ensure that Bonnie's psychiatrist would evaluate her medication in view of her recent auditory hallucinations.

The record also supports a finding that without continued supervision, Bonnie's problems were likely to resurface, to the children's detriment. Natasha, Bonnie's 26-year-old daughter, said she had been dealing with Bonnie's problems with mental health and substance abuse since she was a child. Natasha observed that Bonnie would improve her situation when the court or child protective services were involved. However, as soon as there was no supervision, Bonnie would regress or relapse, and it would take her a while to recover each time.

While Bonnie has improved her circumstances and relationships with her children since May 2012, there is substantial evidence to support the juvenile court's decision to continue its jurisdiction under section 364. The juvenile court reasonably concluded that conditions still exist which would justify initial assumption of jurisdiction under section 300 or that those conditions were likely to exist if supervision was withdrawn. (§ 364.)

9

Continued services will provide maximum safety and protection to Michael and Makayla while providing a full array of social and health services to Bonnie to prevent reabuse of the children.  (§ 300.2.)

## DISPOSITION

The orders are affirmed.


IRION, J.

WE CONCUR:


HALLER, Acting P. J.


McINTYRE, J.