Filed 3/19/14  In re N.C. CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| In re N.C., a Person Coming Under the Juvenile Court Law. | H039619 (Santa Clara County Super. Ct. No. JD21592) |
| SANTA CLARA COUNTY DEPARTMENT OF FAMILY AND CHILDREN'S SERVICES, Plaintiff and Respondent, v. D.C., Defendant and Appellant. | |

D.C. is the father of four-year-old N.C., and appeals an order of the juvenile court sustaining a petition pursuant to Welfare and Institutions Code section 300, subdivision (b)[1] adjudging N.C. a ward of the court and ordering reunification services. Father asserts the court erred in sustaining two of the allegations in the petition, because there is not substantial evidence to support the findings.

---

[1] All further unspecified statutory references are to the Welfare and Institutions Code.

The instant appeal arises out of a November 29, 2012 referral concerning general neglect and emotional abuse of N.C. to the Santa Clara County Department of Family and Children Services (Department). The family had a history of eight prior referrals to the Department between 2009 and 2012 concerning mother's mental health and father's substance abuse. The family received informal services in 2012.

In November 2012, mother lived in the maternal grandmother's home, and father lived with his parents. N.C. spent time in both places. The referral to the Department in November 2012 arose from an incident during which mother had an argument with the maternal grandmother in N.C.'s presence and threatened to kill the maternal grandmother. Mother grabbed N.C.'s arm during the argument, causing red marks.

In investigating the allegations of abuse and neglect, the Department talked to mother, father and N.C., as well as the maternal grandmother and paternal grandparents. Mother said that father had a medical marijuana card, smoked marijuana and drank beer. The maternal grandmother said that mother had untreated mental health issues, and father drove N.C. while he was under the influence of marijuana. The maternal grandmother also stated that she was concerned for N.C.'s safety and that mother and father would physically fight with each other in front of N.C.

The paternal grandmother stated that mother was aggressive and that father smoked marijuana and drank alcohol often. She stated that father would drive N.C. without a car seat. The paternal grandfather stated that mother did not take her medication for Schizophrenia, and he believed father smoked marijuana and drank beer daily. The paternal grandfather called the police in November 2012 when he saw father driving N.C. without a car seat.

Father told the social worker that the paternal grandparents were making everything up. He denied ever driving with N.C. while under the influence or without a

2

car seat. Father denied there was ever any domestic violence with mother, denied that mother was aggressive and violent, and denied that he had any problem with marijuana or alcohol.

N.C. told the social worker that her parents argued often, and yelled at each other and said bad words. N.C. was afraid of her mother because her mother had grabbed her and hurt her and left her home alone sometimes. She had never seen her father smoke anything.

The Department filed a first amended petition under section 300, subdivision (b) on December 12, 2012. N.C. was placed in protective custody and remained with her paternal grandparents as a temporary placement. The court detained N.C., and ordered supervised visitation for both parents.

On January 3, 2013, the Department filed a second amended petition under section 300, subdivision (b). On January 7, 2013, the court held a joint jurisdiction and disposition hearing. At the hearing, father disagreed with the recommendations and requested a date for trial.

Trial on the matter started on March 21, 2013. At trial, the social worker assigned to the case testified regarding her risk assessment, and father's substance abuse that she believed impacted his ability to care for N.C. properly. She stated that father self-reported he began using marijuana at the age of 11 and alcohol at the age of 13 in his Department of Alcohol and Drugs (DADS) assessment conducted on December 17, 2012. Father told his DADS assessor that he last used marijuana on December 10, 2012, and last used alcohol on December 9, 2012. The DADS assessor diagnosed father with an Axis I Cannabis Dependence and referred him to an outpatient substance abuse program. The assessor believed that father was at risk of continues substance abuse if he did not engage in treatment and participate in the recovery community. Following the assessment, father did begin participating in an outpatient program, but resisted making

3

changes and continued to minimize how alcohol and marijuana affected him and his family.

Father testified at trial and described his marijuana and alcohol use as experimentation or socializing. He stated that he went to detox when he was 17 because his father made him, telling him he had to go, or move out. Father also stated that he has never been intoxicated in his life. Father said he did not believe he was an addict because he did not use every day, and he could quit at any time. Neither mother, nor any of the grandparents testified at trial.

At the conclusion of trial, the court sustained the second amended petition as requested by the Department, declared N.C. a dependent of the court, removed her from her parents' care, and ordered a plan of reunification for both father and mother. The court specifically stated that with regard to the allegations of father's substance abuse, there was ample independent evidence besides the grandparents' statements, including the DADS's assessment and findings, as well as father's own statements to the assessor.

Father filed a timely notice of appeal.

### DISCUSSION

Father challenges the sufficiency of the evidence to support two of the jurisdictional findings related to his substance abuse. Specifically, he asserts the findings in b-1 and b-3 were not supported by substantial evidence. [B]-1 states as follows: "On 12/10/12, the child, [N.C.] . . . , age 4, was placed in protective custody pursuant to a protective custody warrant issued on 12/10/12 due to the mother, [E.B.]'s severe mental health problem and the father, [D.C.]'s substance abuse issues." [B]-3 states as follows: "Further, the child's father, [D.C.], has a substance abuse problem which negatively impacts his ability to safely parent the child. [D.C.] smokes marijuana and drinks alcohol to the point of intoxication on a regular basis and he has driven the child while he is under the influence. On 11/30/12 the father was under the influence of marijuana and

4

drove with the child in the car without a car seat.  The mother was also in the car and failed to ensure the safety of the child."

The principles governing such a challenge are familiar. In the trial court, child welfare authorities have the duty to establish the jurisdictional facts by a preponderance of the evidence.  (*In re D.C.* (2011) 195 Cal.App.4th 1010, 1014.)  On appeal, however, " 'we must uphold the [trial] court's [jurisdictional] findings unless, after reviewing the entire record and resolving all conflicts in favor of the respondent and drawing all reasonable inferences in support of the judgment, we determine there is no substantial evidence to support the findings.  [Citation.]' " (*In re J.N.* (2010) 181 Cal.App.4th 1010, 1022.)

"To be sufficient to sustain a juvenile dependency petition the evidence must be ' "reasonable, credible, and of solid value" ' such that the court reasonably could find the child to be a dependent of the court . . . .  [Citation.]" (*In re R.M.* (2009) 175 Cal.App.4th 986, 988.)  Moreover, "[s]ubstantial evidence . . . is not synonymous with any evidence.  [Citation.]  'A decision supported by a mere scintilla of evidence need not be affirmed on appeal.'  [Citation.]  Although substantial evidence may consist of inferences, those inferences must be products of logic and reason and must be based on the evidence.  Inferences that are the result of mere speculation or conjecture cannot support a finding.  The ultimate test is whether a reasonable trier of fact would make the challenged ruling considering the whole record.  [Citations.]" (*In re James R., Jr.* (2009) 176 Cal.App.4th 129, 135.)

Father cites section 355 for the proposition that the hearsay evidence that is the foundation of the conclusions in b-1 and b-3 is not sufficient to support substantial evidence because the hearsay is not corroborated.  Section 355, subdivision (c)(1), provides that if a "party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in" the Department's report, "the

5

specific hearsay evidence *shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based* unless the petitioner establishes one or more" of specified exceptions. (Italics added.) The exceptions are: if a hearsay exception applies (§ 355, subd. (c)(1)(A)); if the "hearsay declarant is a minor under the age of 12 years who is the subject of the jurisdictional hearing" (§ 355, subd. (c)(1)(B)); if the hearsay declarant is a peace officer, health practitioner, social worker, or teacher (§ 355, subd. (c)(1)(C)); or if the "hearsay declarant is available for cross-examination," (§ 355, subd. (c)(1)(D)). (See Cal. Rules of Court, rule 5.684.) Section 355, subdivision (d), confirms the right of any party to subpoena a hearsay declarant as a witness or "to introduce admissible evidence relevant to the weight of the hearsay evidence or the credibility of the hearsay declarant."

Here, Father's attorney made a specific hearsay objection at trial to the mother and grandparents' hearsay statements that he drove N.C. in a car while under the influence of drugs or alcohol. The corroborating evidence of Father's substance abuse is his own admission to the Department and the DADS assessor that he uses marijuana and alcohol and began doing so when he was 11 years old. Father also admitted to using marijuana in the home while N.C. was asleep. Father's own statements, as well as the opinion of the DADS assessor and social worker supported the jurisdictional finding of substance abuse by father and were sufficient in themselves to support the finding of substance abuse in both b-1 and b-3. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 451.) There is ample corroborating evidence. (See *In re R.R.* (2010) 187 Cal.App.4th 1264, 1280-1281.) Thus, none of the hearsay statements regarding father's substance abuse to which Father objected was the sole basis to support the substance abuse finding and the jurisdictional finding based upon it. (§ 355, subd. (c).)

With regard to the finding in b-3 that father drove N.C. in the car while he was under the influence, and specifically drove her on November 20, 2013 without a car seat,

there is no independent evidence to corroborate the grandparents' and mother's statements. While mother was present at the trial, she chose not to testify, and as a result, was unavailable for cross-examination. However, the grandparents were "available for cross-examination," (§ 355, subd. (c)(1)(D); Cal. Rules of Court, rule 5.684(c)). Father's counsel had contact information for the grandparents and the right to subpoena them or "to introduce admissible evidence relevant to the weight of the hearsay evidence or the credibility of the hearsay declarant." (§ 355, subd. (d).) In addition, the grandparents were cooperative witnesses, and were available on telephone standby during the trial. Therefore, because the grandparents were available for cross-examination, their hearsay statements could provide substantial evidence to support the findings in b-3.

**DISPOSITION**

The order is affirmed.

_____
RUSHING, P.J.

WE CONCUR:

_____
PREMO, J.

_____
ELIA, J.