Filed 12/30/14  In re Valentina R. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re VALENTINA R. et al., Persons Coming Under the Juvenile Court Law. | B254588 (Los Angeles County Super. Ct. No. CK90698) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>     Plaintiff and Respondent,<br><br>     v.<br><br>T.R.,<br><br>     Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Philip Soto, Judge.  Affirmed.

_____

Lori Siegel, under appointment by the Court of Appeal, for Defendant and Appellant.

Richard D. Weiss, Acting County Counsel, Dawyn R. Harrison, Assistant County Counsel, Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother T.R. appeals from the judgment entered after the juvenile court declared her daughters, Valentina and Ava R., two-year-old twins, dependents of the court under Welfare and Institutions Code section 300, subdivision (b)[1], and removed the children from her custody. Mother contends substantial evidence does not support the jurisdictional finding against her and, even if jurisdiction were proper, substantial evidence does not support removal under section 361, subdivision (c)(1). We disagree with mother's contentions and thus affirm the judgment.

**DISCUSSION**

1. *Jurisdiction Under Section 300, Subdivision (b)*

"The purpose of section 300 is 'to identify those children over whom the juvenile court may exercise its jurisdiction and adjudge dependents.' [Citation.]" (*In re A.O.* (2010) 185 Cal.App.4th 103, 110.) To declare a child a dependent under section 300, the juvenile court must find by a preponderance of the evidence that the allegations are true. (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318; see § 355, subd. (a).) We review the court's findings under section 300 for substantial evidence and will affirm the judgment based on those findings if they are supported by reasonable, credible evidence of solid value. (*Matthew S.*, at p. 1319.)

Under section 300, subdivision (b), the juvenile court may adjudge a child a dependent of the court when "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . ." "A jurisdictional finding under section 300, subdivision (b)[,] requires: '"(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the child, or a 'substantial risk' of such harm or illness." [Citation.]' [Citations.]" (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) When the jurisdictional finding is "based on the parent's 'inability . . . to adequately supervise or protect the child[]'" the Department of Children and Family Services (DCFS) must show

[1] Statutory references are to the Welfare and Institutions Code.

"parental unfitness or neglectful conduct." (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1254.)

The juvenile court declared the children dependents by sustaining the section 300, subdivision (b), allegation against mother that mother and her male companion "have a history of engaging in violent altercations in the children's presence. On 10/23/2013, the mother repeatedly struck the male companion's face, with the mother's fists, inflicting lacerations to the male companion's lips and swelling to the male companion's face. The mother scratched the male companion's neck and cheek, inflicting scratches to the male companion's neck. The mother brandished two knives at the male companion and threatened to stab the male companion with the knives. The male companion required medical treatment for his injuries. The mother broke the male companion's telephone. On a prior occasion, the mother threw the male companion's bicycle and clothes off the balcony. On 10/23/2013, the male companion attempted to kick [in] the mother's front door and pushed his []way into the home, causing the mother to sustain injuries to her fingers. On prior occasions, the mother and male companion engaged in physical altercations. The mother failed to protect the children in that the mother allowed [her] male companion[] to reside in the children's home, resulting in ongoing incidents of domestic violence. On 10/23/2013, the mother was arrested for [i]nflicting [c]orporal [i]njury [on a] . . . [c]ohabitant. Such violent conduct [o]n the part of the mother against the male companion and mother's failure to protect the children[] endangers the children's physical health and safety and places the children at risk of physical harm, damage and failure to protect." Mother contends the evidence is insufficient to support this allegation. We disagree.

According to the evidence, mother has a significant history in dependency court in Alameda County regarding three older children. From 2006 to 2009, 13 referrals were made about the children. In 2008 mother voluntarily placed the children in foster care when she was hospitalized. In 2009 mother initiated independent adoption procedures when she was ill. The children were adopted by a family in North Carolina in 2011. Mother reported that, before their adoption, the children were exposed to domestic

3

violence between her and the father and that the father's criminal history involved domestic violence, which caused her to suffer posttraumatic stress disorder. The oldest child was reported to have punched his younger sister in the face multiple times and broken the neck of a kitten, having witnessed domestic violence in the household and been affected by it. All three children were reported to be "suffering from Reactive Attachment Disorder as a result of early neglect and trauma. All three have delays in emotional and social development."

With respect to the two children at issue in the current petition[2], a referral was made shortly before their birth in October 2011. According to the caller, mother said she had been pregnant with triplets, although she later gave birth to twins and reported that one baby did not survive. The caller said that "[m]other states on a regular basis 'how much she hates the babies' and 'what she is going to do as soon as the babies are born.' She states that she is going to 'throw them away.' She also states 'how much she wants them dead.' . . . According to the caller, the neighbors in the apartment building are so concerned with the mother . . . [that] they have posted 'Safe Surrender' signs/posters on their apartments." The referral was "[e]valuated out."

Another referral was made about five days after the children's birth in which the caller reported that when pregnant mother "often talked about wanting to give up the baby or get rid of the baby or kill the baby." This caller also reported that mother had stated she was pregnant with triplets. A removal warrant was granted on November 5. On November 28 a petition was dismissed for insufficient evidence, and the children were returned to mother.

Just more than a month later, on January 3, 2012, when the children were two months old, a third referral was made from a "caller who reported 'having serious concerns over the mother leaving the children inside her home for at least thirty minutes

---

[2]     The court named a presumed father for the two children. He was not part of the dependency proceedings, as his whereabouts were unknown. He is not the father of mother's three older children.

4

while she stays in the basement laundry room." Mother refused to cooperate in an investigation, and the referral was deemed inconclusive.

A fourth referral was made on August 23, 2013, based on emotional abuse and general neglect. One of the children suffered a burn mark on her foot while under the care of a woman who was residing in mother's home. Mother asked the woman and her male companion to leave the residence after learning her children had been removed from her due to domestic violence. The investigation revealed that mother's explanation for the injury, that the child was burned when she accidentally had touched the woman's flat iron, was consistent with the burn mark, and the child did not require medical attention. Although mother was not compliant in multiple respects with DCFS, the referral was deemed inconclusive based on the fact that "no child safety factors exist at this time."

About two months later, the instant petition was filed after mother had been arrested on October 23 based on an incident of domestic violence that morning with her then boyfriend. Mother reported to police that the boyfriend's injuries were self-inflicted to make up an "'attack.'" The boyfriend, however, told police that mother "went to the kitchen and grabbed two kitchen knives. [She] scraped the knives against one another and told [the boyfriend] that she would stab him and doesn't care if she goes to jail. [The boyfriend] pleaded for her to calm down and that he was not doing anything wrong. [Mother] then dropped both knives and ran toward[] [the boyfriend]. [She] proceeded to punch [him] numerous times (closed fist) in the face and scratched him on his neck and chest area." The police found the boyfriend "crying and visually upset. . . . He had multiple scratches throughout his face and was swollen." The boyfriend "had multiple visible injuries. [He] had numerous small cuts above his lip, on his neck and torso area. [He] also had swelling to both sides of his cheek bones and scratches around his neck." A tenant in mother's apartment building reported to the police that "she has witnessed mother throw [the boyfriend's] bike and clothes off the balcony." Two tenants told the police that on the night of October 22 "they [had] heard loud banging noises (as if furniture was being thrown) and yelling coming from upstairs [where mother's apartment was located]. The neighbors text messaged [mother] and asked her to keep the noise

5

down and asked if there were any problems. There was no response." Although mother said the children were not home during the incident on October 23, the boyfriend reported that they were in the bedroom. The boyfriend also said that there had been prior physical altercations, but this was the first time he had reported one. Both children were assessed as having attachment issues.

This evidence demonstrates that mother has a repeated pattern of domestic violence, which led to attachment issues with her older children that also were present with the children at issue here at their young age. The juvenile court found incredible mother's version that the boyfriend's injuries were self-inflicted. The police's observation of the boyfriend's appearance physically and emotionally supported his account of the incident. The evidence pointed to other incidents of physical altercations between mother and the boyfriend. The children were young toddlers and unable to report mother's actions or protect themselves in the case of violence in the home. They already were suffering attachment issues, as had their older half-siblings when in mother's care and exposed to domestic violence. Although mother had obtained a restraining order against the boyfriend, and the boyfriend said he would not see mother, the pattern of domestic violence, the mother's response and the needs of the children support a determination of a substantial risk of serious physical harm or illness to the children

Mother contends the evidence is not substantial because the juvenile court should have sustained her objections to admission of evidence of the boyfriend's statements in the police and social worker reports. Under section 355, subdivision (c)(1), "If any party to the jurisdictional hearing raises a timely objection to the admission of specific hearsay evidence contained in a social study, the specific hearsay evidence shall not be sufficient by itself to support a jurisdictional finding or any ultimate fact upon which a jurisdictional finding is based, unless the petitioner establishes" one or more of several exceptions. This provision "does not bar hearsay evidence at a jurisdictional hearing but, if a timely objection is made and no hearsay exception applies, the evidence must be corroborated. [Citation.] . . . [¶] Corroborating evidence is evidence [that] supports a

6

logical and reasonable inference that the act described in the hearsay statement occurred. [Citation.] The quantum of corroboration necessary to support a jurisdictional finding is 'somewhat analogous to the rule in criminal law requiring independent corroborative proof of accomplice testimony,' that is, direct or circumstantial evidence, even if slight, is sufficient if it tends to connect the accused with the act. [Citation.]" (*In re R.R.* (2010) 187 Cal.App.4th 1264, 1280-1281.) The boyfriend's statements about his version of the incident were corroborated by the police's observations of his emotional state and injuries when they saw him after the incident. The court thus did not err in relying on the boyfriend's statements to determine jurisdiction, and they need not be ignored to determine substantial evidence supports the jurisdictional finding.

2.      *Removal*

Mother also argues that, even if jurisdiction were proper, the juvenile court erred in removing the children from her custody because the standard for removal under section 361, subdivision (c)(1), was not met. Substantial evidence supports the court's finding under section 361, subdivision (c)(1), of clear and convincing evidence that "[t]here is or would be a substantial danger to the physical health, safety, protection, or physical or emotional well-being of the minor if the minor were returned home, and there are no reasonable means by which the minor's physical health can be protected without removing the minor from the minor's parent's . . . physical custody." (*In re Henry V.* (2004) 119 Cal.App.4th 522, 529 [review standard for removal decision under § 361, subd. (c)(1), is substantial evidence].) In addition to the evidence supporting jurisdiction, during a monitored visit, mother took the children into a bathroom, and they were heard screaming while in the bathroom. Mother brought them into a toilet stall and took pictures of the children's buttocks and labia areas. Days later, she produced the pictures, claiming they showed marks evidencing abuse while the children were in foster care. The pictures, however, did not reveal the marks claimed by mother, and the foster mother did not observe any marks. A follow-up investigation revealed mother's claims were unfounded. Under these circumstances, the court did not err in removing the children from mother's custody.

7

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED</u>.

ROTHSCHILD, P. J.

We concur:

CHANEY, J.

JOHNSON, J.