Filed 3/23/16  In re Isaiah V. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ISAIAH V., a Person Coming Under the Juvenile Court Law.<br>_____<br><br>LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>      v.<br><br>JOSE V.,<br><br>    Defendant and Appellant. | B267581<br><br>(Los Angeles County<br>Super. Ct. No. DK10590) |

Appeal from an order of the Superior Court of Los Angeles County.  Debra Losnick, Commissioner.  Reversed and remanded.

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

Mary C. Wickham, County Counsel, R. Keith Davis, Acting Assistant County Counsel, and Jeanette Cauble, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Jose (Father) appeals from the juvenile court's jurisdictional and dispositional orders regarding his son, Isaiah. Father argues that substantial evidence does not support the jurisdictional finding and that, as a noncustodial parent, he was entitled to placement consideration under Welfare and Institutions Code section 361.2.[1] Because the record contains no evidence that Father placed Isaiah at risk of serious physical harm, the jurisdictional order is reversed. Because Father is Isaiah's noncustodial parent, we remand the case to the juvenile court to hold a disposition hearing regarding Isaiah's placement with Father under section 361.2.

## FACTS AND PROCEEDING BELOW

On March 19, 2015, the Department of Children and Family Services (DCFS) received a referral alleging severe neglect and emotional abuse of Isaiah (age 6) by his mother, Sylvia (Mother).[2] At the time, Isaiah lived with Mother, her two adult children and a family friend.

Mother reported that Father was in prison. Mother and Father were living together at the time of Isaiah's conception and birth, but ended their relationship in 2013. Father had two older children who lived with their paternal grandmother under legal guardianship.

On March 30, 2015, DCFS filed a dependency petition pursuant to section 300, subdivision (b) alleging that Mother failed to protect Isaiah by creating an unsafe, dangerous and detrimental home environment. At a detention hearing the same day, the court ordered the removal of Isaiah from Mother and placed him with his paternal grandmother.

On May 5, 2015, the social worker interviewed Father by telephone. Father reported that all his criminal history involved drug sales but not consumption, and, although he was not a drug addict or drug user, he was willing to attend a drug treatment program because he wanted to gain custody of Isaiah. Father admitted a domestic

---

[1] All statutory references are to the Welfare and Institutions Code.

[2] Isaiah's mother is not a party to this appeal and will be mentioned only where relevant to Father's appeal.

2

violence arrest concerning Mother in 2009, but their relationship ended " 'a long time ago,' " and he planned to marry his current girlfriend when he was released from prison in June 2015.

On May 12, 2015, DCFS filed a first amended petition, adding an allegation, under section 300, subdivision (b), that Father failed to protect Isaiah, based on Father's criminal history and purported substance abuse.[3]

On June 17, 2015, Father was released from custody and, the following week, contacted the social worker to arrange visits with Isaiah. Father reported that he had completed a 90-day anger management course and a parenting program while incarcerated and provided the social worker with the certificates of completion for both. He also reported that he was on probation for one year and was required to drug test twice a month and meet with his probation officer regularly.

On June 29, 2015, Father attended the jurisdiction hearing, and the court appointed him counsel. He denied the allegations of the first amended petition. The court set trial for July 21, 2015.

In preparation for trial, DCFS reported that Father had recently twice tested negative for drugs. He was working full time and residing with his girlfriend. The social worker conducted a home visit and found the residence to be clean and organized. A spare room had two beds, which Father's older children used when they came for visits. Father planned to put a third bed in the room for Isaiah. The social worker found that the home was appropriate for visits and Father's girlfriend had already been approved by DCFS as a monitor. Father had been consistently visiting Isaiah.

---

[3] Specifically, DCFS's first amended petition alleged that Father failed to protect Isaiah because he "has a history of substance abuse and a criminal history of possession/purchase sale of narcotics/controlled substances which renders the father unable to provide regular care of the child. The father's substance abuse and criminal history related to drugs endangers the child's physical health and safety, creates a detrimental home environment and places the child at risk of serious physical harm, damage, danger and failure to protect."

DCFS also opined that Father's lifestyle was "unknown" due to his recent release from prison. In addition, his most recent criminal conviction involved drug related charges, and he had not yet participated in any drug programs. Therefore, it was premature to release Isaiah to Father.

On July 21, 2005, the court conducted both a jurisdictional and dispositional hearing. DCFS requested that the court sustain the petition as amended, arguing that Father had only recently been released from custody, where he had been incarcerated on drug-related charges. Father's attorney requested that the allegation regarding Father be dismissed, arguing that DCFS had failed to meet its burden that Father's criminal history, which was based on sales/possession of drugs rather than personal use, placed Isaiah at substantial risk. Moreover, Father's home was appropriate and Isaiah's brothers had stayed there for weekend visits.

The court sustained the amended petition, noting that even if Father was only convicted of transporting and selling drugs, Isaiah was still at risk due to Father's criminal history. The court declared Isaiah a dependent and removed him from parental custody under section 361, subdivision (c), and ordered reunification services, random drug testing of Father, counseling to address criminal behavior, and monitored visitation for Father.

Father timely appealed.

## DISCUSSION

I. *Jurisdiction*

Father argues that substantial evidence does not support the court asserting jurisdiction in relation to him. We agree.

Section 300, subdivision (b) provides a basis for jurisdiction if the child "has suffered, or there is a substantial risk the child will suffer, serious physical harm or illness caused by the parent's inability to provide regular care for the child." (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) A jurisdictional finding under section 300, subdivision (b) requires "(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the minor, or a

4

'substantial risk' of such harm or illness." (*In re Rocco M.* (1991) 1 Cal.App.4th 814, 820.) "Subdivision (b) means what it says. Before courts and agencies can exert jurisdiction under section 300, subdivision (b), there must be evidence indicating that the child is exposed to a *substantial* risk of *serious physical* harm or illness." (*In re Rocco M.*, *supra*, 1 Cal.App.4th at p. 823.)

The only evidence that the court and respondent relied on to support jurisdiction was Father's past drug related history. But a parent's past conduct does not establish a risk to the child unless there is reason to believe that the endangering conduct will continue into the future. (See *In re Alysha S.* (1996) 51 Cal.App.4th 393, 399; *In re Nicholas B.* (2001) 88 Cal.App.4th 1126, 1134.) Here, there was no such evidence. Indeed, the record demonstrates, and the court found, that rather than returning to past patterns of behavior, Father "made progress." While incarcerated, he completed anger management and parenting classes, and, since his release, had tested negative for drugs, was working full time, living in a child-appropriate, safe environment, in a stable relationship and consistently visited Isaiah and his brothers. As a result, there was no basis to assert jurisdiction over Isaiah based upon Father's conduct.

II.     *Dispositional Order*

Father contends that the court improperly denied him custody of Isaiah. As a noncustodial parent at the time of the qualifying events, Father argues that he was entitled to placement consideration under section 361.2. Instead, the court erroneously applied section 361, subdivision (c).[4] We agree.

Section 361.2, subdivision (a), provides in part that when a court orders removal of a child pursuant to section 361, it "shall first determine whether there is a parent of the child, with whom the child *was not residing* at the time that the events or conditions arose that brought the child within the provisions of Section 300, who desires to assume custody of the child." (Italics added.) If the parent requests custody, the court

---

[4]     It is undisputed that Isaiah resided with Mother and was in her custody when DCFS filed its petition in this case.

should place the child with the parent unless it would be detrimental to do so. (§ 361.2, subd. (a).)

Here, the court denied placement with Father, the noncustodial parent, based upon the identical, insufficient grounds upon which it based its jurisdictional finding: Father's criminal history and presumed drug use. Neither criminal history nor presumed drug use, based upon prior drug convictions, provides the clear and convincing evidence the court needed to find that Isaiah's placement with Father would be detrimental.[5] Accordingly, we reverse the dispositional order and remand for a new hearing under section 361.2, which requires a finding of detriment based on clear and convincing evidence. Father's criminal history and presumed drug use cannot alone serve as a basis for the court to deny placement.

## DISPOSITION

The jurisdictional and dispositional orders are reversed. The case is remanded to the juvenile court to hold a new dispositional hearing to consider placing Isaiah with Father under section 361.2.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:


JOHNSON, J.


LUI, J.

---

[5]     Because we reverse the court's dispositional order and remand for a new hearing, we need not consider the court's order requiring Father to participate in a substance abuse program and denying his request for unmonitored visitation.

6