Filed 7/30/14  In re Paige M. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re PAIGE M. et al., Persons Coming Under the Juvenile Court Law. | B252537<br>(Los Angeles County<br>Super. Ct. No. CK98087) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>      Plaintiff and Respondent,<br><br>      v.<br><br>DESIRAE V.,<br><br>      Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Annabelle G. Cortez, Judge.  Affirmed.

_____

Megan Turkat Schirn, under appointment by the Court of Appeal, for Defendant and Appellant.

John F. Krattli, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Jacklyn K. Louie, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

Mother Desirae V. appeals from the judgment entered after the juvenile court declared her children, Paige M. and James T., Jr., dependents of the court, placed the children with their respective fathers, terminated jurisdiction and made family law orders. Mother contends that substantial evidence does not support the jurisdictional findings. We disagree and thus affirm the judgment.

### FACTUAL AND PROCEDURAL BACKGROUND

On March 4, 2013, the Department of Children and Family Services (DCFS) filed a Welfare and Institutions Code section 300 petition[1] as to Paige, then age eight, and James, then age four. As amended, the petition alleged under subdivision (b) that Mother "has a history of illicit drug use, and is a current user of marijuana, which renders the mother incapable of providing regular care of the children. On 12/19/2012, the mother used, possessed and was under the influence of marijuana while the child, James, was in the mother's care and supervision. The mother's illicit drug use endangers the children's physical health and safety and creates a detrimental home environment, placing the children at risk of physical harm." It also alleged as to James under subdivision (b) and as to Paige under subdivision (j) that, "[o]n 12/19/2012, . . . mother . . . created a detrimental and endangering situation for the child James, in that the mother allowed unrelated males to use, possess and be under the influence of marijuana, in the children's home in the child[] James'[s] presence. Such a detrimental and endangering situation established for the child by the mother, and the mother's failure to protect the child, endangers the child's physical health and safety and places the child and the child's sibling, Paige, at risk of physical harm."

At the detention hearing, also on March 4, the juvenile court ordered James released to his father in San Diego and Paige detained in foster care. The court ordered mother not to smoke marijuana and granted her monitored visitation, family reunification services as to Paige and family maintenance services as to James. The court later released Paige to her father, who lives in Washington. Both fathers were ordered to

---

[1]     Statutory references are to the Welfare and Institutions Code.

facilitate sibling contact as well as, along with DCFS assistance, visits and contact with mother.

The juvenile court held an adjudication and disposition hearing on August 21 and September 23. DCFS, counsel for each of the fathers and the children's counsel argued in favor of jurisdiction, while mother's counsel opposed it. After hearing mother's testimony, argument by counsel and reviewing exhibits, the court sustained as amended the allegations in the petition under section 300, subdivisions (b) and (j), and declared Paige and James dependents.

As to jurisdiction, the juvenile court stated that both fathers have "outline[d] the mother's extensive history with using marijuana . . . and the mother also indicated her history with marijuana—actually the mother in the report indicates she did not have a severe history of marijuana that is not necessarily consistent with those report[s] by those around her, including [James's father] where he indicated that [mother] had the history of smoking marijuana and [ ]he knew she had started up using again; and [Paige's father] who indicated that when he met [mother] she smoked marijuana and smoked it regularly with [him]. She has always smoked marijuana. The maternal grandmother also indicates her daughter struggled with issues such as drugs and violence and she is not sure of all of the drugs that [mother] used . . . definitely the use of marijuana, methamphetamine and the issues and the allegations relate to marijuana. The paternal great aunt also talks about [mother] smoking marijuana and becoming physical. The court does note that with respect to the allegations that mother has enrolled in classes and has started to address the issue, and has also tested negative when she started testing and then she refused to test and then she subsequently started testing randomly back in March, and there are negative results."

The juvenile court continued, "[T]here is a nexus between the use and the risk to the children. Specifically . . . the court notes that James has autism and Paige is nine years old and James is four. The incident described [in the allegations] is outlined in the reports and it says the mother having left James in the living room watching television while she and her neighbors smoked marijuana in the room and this is when James was

3

four; and the reports indicate[] that when the police came, the apartment—the mother describes the incident where she went to the bedroom and took two hits and closed the bedroom door while they were smoking and the neighbors placed the towel by the door. When the [emergency response] worker came to the apartment, it smelled like marijuana and so according to the report although the mother went into the bedroom to smoke the marijuana with friends, James was being exposed to marijuana, the smell of the marijuana, not only that he is a child who has special needs and the mother was leaving a four-year old to care for himself while she smoked marijuana in the room with her neighbors. Paige also indicated—the court found the mother credible with respect to her efforts but not necessarily so with respect to admitting the more recent and current use. . . . She indicated . . . in her testimony that she didn't smoke around the kids and that conflicts with the incident in 12-2012 where she smoked and James was in another room; and she also indicated that was a one[-]time incident and Paige indicates that when [mother] come[s] into her room referring to the friends. [Paige says] [her] mom has a lot of friends, when they come to the house they go into the room and close the door. She does not lock the door and she comes out to check up on [Paige] and James. So Paige's information certainly suggest[s] that this is not a one[-]time incident. With respect to the risk to the children, the court also notes that . . . mother claims that [James] has a severe breathing problem[ ] and yet smokes in the house and she lets others smoke in the house as well. . . . There are concerns with respect to the mother's ability to . . . care for the children . . . . The children had significant absences from school. The reports of the children not being appropriately fed."

At disposition, the juvenile court terminated jurisdiction over the children with family law orders, which awarded sole legal and physical custody to the respective fathers. The court granted mother monitored visitation with James every other weekend, plus telephonic contact of two to three times per week, and with Paige once a month, plus telephonic contact of two to three times per week.

Mother filed a timely notice of appeal. (§ 395, subd. (a)(1); see *In re Tracy Z.* (1987) 195 Cal.App.3d 107, 112 [jurisdictional findings reviewable on appeal from the judgment following disposition].)

## DISCUSSION

Mother contends that the evidence is insufficient to support the jurisdictional findings because, at the time of the jurisdiction and disposition hearing, which occurred on August 21 and September 23, 2013, "there was no current or future risk of harm [to the children] related to her prior drug use." We disagree.

"The purpose of section 300 is 'to identify those children over whom the juvenile court may exercise its jurisdiction and adjudge dependents.' [Citation.]" (*In re A.O.* (2010) 185 Cal.App.4th 103, 110.) To declare a child a dependent under section 300, the juvenile court must find by a preponderance of the evidence that the allegations are true. (*In re Matthew S.* (1996) 41 Cal.App.4th 1311, 1318; see § 355, subd. (a).) We review the court's findings under section 300 for substantial evidence and will affirm the judgment based on those findings if they are supported by reasonable, credible evidence of solid value. (*Matthew S.*, at p. 1319.)

As noted, the juvenile court took section 300 jurisdiction over James under subdivision (b) and over Paige under subdivisions (b) and (j). Section 300, subdivision (b), permits a dependency when, among other reasons, "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent . . . to adequately supervise or protect the child . . . ." "A jurisdictional finding under section 300, subdivision (b)[,] requires: '"(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the child, or a 'substantial risk' of such harm or illness." [Citation.]' [Citations.]" (*In re James* (2009) 176 Cal.App.4th 129, 135.) When the jurisdictional finding is "based on the parent's 'inability . . . to adequately supervise or protect the child[ ]'" DCFS must show "parental unfitness or neglectful conduct." (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1254.) Section 300, subdivision (j), provides that jurisdiction over a child arises

5

when "[t]he child's sibling has been abused or neglected, as defined in subdivision (a), (b), (d), (e), or (i), and there is a substantial risk that the child will be abused or neglected, as defined in those subdivisions. The court shall consider the circumstances surrounding the abuse or neglect of the sibling, the age and gender of each child, the nature of the abuse or neglect of the sibling, the mental condition of the parent or guardian, and any other factors the court considers probative in determining whether there is a substantial risk to the child."

As noted, the sustained allegations provided that mother "has a history of illicit drug use, and is a current user of marijuana, which renders the mother incapable of providing regular care of the children. On 12/19/2012, the mother used, possessed and was under the influence of marijuana while the child, James, was in the mother's care and supervision." In addition, "[o]n 12/19/2012, . . . mother . . . created a detrimental and endangering situation for the child James, in that the mother allowed unrelated males to use, possess and be under the influence of marijuana, in the children's home in the child[] James'[s] presence." Substantial evidence supports jurisdiction based on these allegations.

Mother admitted that on December 19, 2012 she allowed two unrelated males into her apartment and smoked marijuana with them in her bedroom while four-year-old James, an autistic child with special needs, remained unattended in the living room. Mother also admitted a history of marijuana use, which the maternal grandmother, the paternal great aunt, the children's respective fathers and James's father's girlfriend corroborated based on their experiences and interactions with mother. A neighbor reported that she and other neighbors often smell marijuana from mother's apartment and complain "that there [is] a lot of traffic at [mother's] unit and a lot of male[s] coming in and out of the unit in the middle of the night. Additional[ly], [the neighbor] . . . witnessed high school kids jumping the fence to enter [mother's] unit." The neighbor heard mother screaming at Paige "'you stupid little bitch'" and said that Paige would come asking for food. The maternal grandmother stated that mother had been physically violent with the children. Paige reported that mother had directed her not to disclose

certain information to social workers but revealed that two men are at her home all the time and other men, whom she does not know, "come in and out of her home to see her mother." Paige said her mother and male friends go in the bedroom with the door closed for 20 to 30 minutes, and she cares for James during those times. Paige admitted being hungry and asking a neighbor for bread. Paige's teacher reported that Paige had come to school without eating, and Paige said she had missed breakfast because she was taking care of her brother. Paige also had absences, behavioral issues and 76 missed assignments in third grade when living with her mother, and James too had absences from school, as well as numerous visits to the doctor where mother had reported high fevers that were not present when he was examined. Paige's therapist, who had seen her eight times since December 5, 2012 and met with mother, stated that "'Paige has consistently reported events and circumstances of grave concern in [his] sessions with her. She also has stated that her mother instructs her not to disclose these events and circumstances to anyone, and that her mother would verbally chastise[] her for doing so after visits from social workers.'" The therapist expressed "'ongoing, serious concern for the safety and well being of [Paige] and the adequacy of the home environment.'" This evidence of mother's marijuana use, her leaving two small children, one with diagnosed special needs, unattended and the effects on the children is sufficient to show a substantial risk of serious physical harm or illness to the children based on mother's marijuana use.

Although at the time of the jurisdiction and disposition hearing, mother claimed not to have smoked marijuana since the incident on December 19, 2012, the juvenile court found mother "not necessarily [credible] with respect to admitting the more recent and current use." In addition, as the court recognized, mother had taken steps to address her marijuana use and the impact on her children. Mother completed a 10-session substance abuse program, partially completed domestic violence and parenting courses and had recent negative drug tests. She enrolled in a drug treatment program in June 2013, did not attend the program in August, and resumed participation in September. Nevertheless, mother had completed only about a third of the drug treatment

7

program, and the program recovery specialist recommended that mother continue in treatment.  Thus, mother's statements about her disuse of marijuana and her participation in programs do not negate the substantial risk of harm present for jurisdiction.

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


ROTHSCHILD, P. J.

We concur:



JOHNSON, J.



WILEY, J.*

---

\*      Judge of the Los Angeles Superior Court, Assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.