Filed 4/30/15  In re Alexis V. CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| In re ALEXIS V. et al., Persons Coming Under the Juvenile Court Law. | B259426 (Los Angeles County Super. Ct. No. DK06920) |
| LOS ANGELES COUNTY DEPARTMENT OF CHILDREN AND FAMILY SERVICES,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>M.V.,<br><br>    Defendant and Appellant. | |

APPEAL from orders of the Superior Court of Los Angeles County.  Margaret S. Henry, Judge.  Reversed.

Ernesto Paz Rey, under appointment by the Court of Appeal, for Defendant and Appellant.

Mark J. Saladino, County Counsel, Dawyn R. Harrison, Assistant County Counsel, and Kim Nemoy, Principal Deputy County Counsel, for Plaintiff and Respondent.

_____

M.V. (Father) appeals from the juvenile court's September 12, 2014 jurisdictional and dispositional orders. He contends that substantial evidence did not support the court's order declaring minors Alexis V. (born in 2002), M.V., Jr. (born in 2003), and Melanie V. (born in 2008) dependents of the court pursuant to the petition alleged under Welfare and Institutions Code section 300, subdivision (b)(1) based on Father's drug use.[1] He also contends that because there was insufficient evidence to establish dependency court jurisdiction, the jurisdictional and dispositional orders must be reversed.[2] We agree.

## BACKGROUND

**The section 300 petition**

On August 15, 2014, the Department of Children and Family Services (DCFS) filed a petition under section 300, subdivision (b)(1) (failure to protect from risk of serious physical harm or illness). As sustained, the petition alleged that Father had a history of illicit drug abuse and was a current abuser of amphetamine and methamphetamine, rendering him incapable of providing regular care for the minors. Father had a positive drug test for amphetamine and methamphetamine on August 5, 2014, and his use of illicit drugs endangered the minors' physical health and safety and created a detrimental home environment.

**Reports prior to the jurisdictional and dispositional hearing**

We summarize DCFS's reports in connection with the jurisdictional and dispositional hearing.

On July 30, 2014, DCFS received a referral of "emotional abuse," informing DCFS that, among other things, Father had made death threats to Mother's boyfriend, Robert A.; Father was asking the minors to request grocery money from Mother; and Father's recent weight loss indicated that Father might still be using illicit drugs. Mother and the minors were not living with Father.

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] Claudia A. (Mother) is not a party to the appeal.

Upon being interviewed by DCFS, Mother claimed responsibility for the referral. She said she called DCFS because Father had threatened to call DCFS and the police because Mother had refused to give him money to buy the minors food when they visited him. Mother believed Father might be using illicit drugs. Mother called DCFS later that same day to report that Father had not "directly made death threats to her boyfriend," but that the minors had told her Father did not like her boyfriend. She stated that Robert A. had "smacked" Alexis on the buttocks, but that this was an isolated incident and Robert said he would not do so again.

In a later interview, Mother said she had been separated from Father for five years because of his drug use; they had divorced in 2012. Father had been doing well in maintaining his sobriety, but Mother believed he had recently begun using drugs because he had lost a lot of weight in a short period of time and was employed but had started asking the minors to request money from her for groceries. She stated that the minors reported to her that he did not have food for them during their visits. Mother also reported "mean and threatening text messages" from Father. Mother stated that Father had told the minors that "if Robert ever touched them that he would kill him."

Mother reported that she was concerned about Alexis, who three years previously had nightmares and hallucinations because of Father's emotional abuse, including telling her that he was afraid he would be killed by gang members who were following him. Alexis had engaged in cutting and was subsequently diagnosed with PTSD. She received services; a dependency referral initiated in 2012 was closed.

A 2012 DCFS report indicated that a referral had been opened regarding Alexis's concerns about being followed by gang members. When interviewed, Father stated he had been in a car with the minors when gang members had approached him, but the gang members left when they saw the minors in the car. He denied telling the minors that he said he was going to be killed by gang members. Alexis appeared to be affected by Mother and Father's separation and pending divorce, and was referred for mental health services due to her thoughts of killing herself. Alexis, however, was not hospitalized. In April 2012, the referral was recommended to be closed.

Maternal grandmother reported that she was concerned that Father asked for grocery money from the minors, but she was not concerned about abuse or neglect because he "love[s] the children."

The minors' immunizations were up to date and they showed age appropriate development. The minors reported to DCFS that Father did not use illegal drugs and that they had never observed Father using illegal drugs. He did not even smoke, although he drinks beer. The minors said that Father had never stated he was going to kill Mother's boyfriend, but instead, Father stated he would always protect the minors and that "no one should ever hurt them."

Alexis reported she had felt uncomfortable when Robert "'smacked'" her on her buttocks as she passed by, and that she had told her Mother and maternal grandmother, who made Robert apologize. She had nightmares when she was in the third grade and attended counseling for two years. She stated she had not cut herself for at least two or three years. Alexis reported concern for Father's well-being based on his remark that he was upset about the detention and substance abuse allegations and was considering moving to Mexico.

Alexis also said that Father would buy food to feed them or had food in the home when they visited. She reported Father regularly asked her and her siblings to ask for grocery money from Mother because he claimed Mother had a good job. M.V., Jr., stated that paternal aunt "feeds them and the father at her home." He "denied that the father does not feed him or his siblings," even though Father did not have "much food" in the home. M.V., Jr., said that Father asked him to ask Mother for grocery money only one time, "'but that's because my mom has more money.'"

DCFS interviewed Father at his home with the minors present. Father denied having ever used drugs. When the minors visited, Alexis and Melanie slept together in a bed and Father and M.V., Jr., slept on a blow-up mattress. The minors were observed to be cheerful while watching television at Father's home. They did not have marks or bruises on their bodies and smiled when they said they enjoyed visiting Father. They said they had just finished eating beans and tortillas. The refrigerator contained spoiled food

4

and the kitchen was not clean. Father said he would clean the refrigerator that day. Father was offered a bag of groceries, which he accepted.

Subsequently, Father admitted he had used illicit drugs for over 12 years. He had stopped using drugs and had maintained sobriety for a "long period." He stated that he recently relapsed and began using methamphetamine several times a week, but not when the minors were having weekend overnight visits with him. Father tested positive on August 5, 2014. Later, he claimed that the last time he had used drugs was on the day of a court hearing on August 15, 2014. He failed to show for an on-demand drug test on September 4, 2014, but admitted that the test would have "likely" been positive. He also failed to enroll in any programs or to meet with a social worker to discuss a visitation plan; he had not visited the minors since their detention.

After the minors were detained from Father's custody, Alexis reported she was sad because she was not visiting Father and stated she wanted to continue visiting him. Alexis denied being depressed or having suicidal thoughts. M.V., Jr., also missed Father and wanted to visit him. Melanie was shy and would not answer questions.

**The jurisdictional and dispositional hearing**

On September 12, 2014, the juvenile court held the jurisdictional and dispositional hearing. The court admitted into evidence DCFS's reports and attachments. There were no witnesses.

Minors' counsel joined with Father's counsel in arguing that the petition should be dismissed because DCFS had not shown a nexus between Father's drug use and harm to the minors. Minors' counsel also argued that Father was being protective of the minors as a result of the incident when Robert slapped Alexis on the buttocks. DCFS argued that there was a nexus between Father's drug use and his asking that the minors request money from Mother for food, specifically, Father's dirty refrigerator, 12-year history of drug use, admitted recent relapse in using drugs, and recent admission that he would have had a positive drug test. Mother's counsel stated that Mother did not want the case to be closed with a family law order because she believed Father needed drug services.

5

The juvenile court stated that it was concerned about the lack of judgment Father had shown in asking the minors to request money from Mother for food. It stated that Father was currently using methamphetamine, which explained the "over the top" reaction in making a death threat to Robert and Father's radical weight loss, which "is a nexus to the relationship with the children."

The juvenile court adjudged the minors dependents of the court and ordered them removed from Father's custody, finding by clear and convincing evidence that there was substantial danger if they were returned to him, and there were no reasonable means by which they could be protected. Mother was ordered to have physical custody of the minors and Father was ordered to participate in a drug and alcohol program with after care, random or on-demand drug and alcohol testing, a 12-step program, and parenting and individual counseling. He was ordered monitored visits. The court gave DCFS discretion to liberalize Father's visits. Alexis was ordered to be assessed for individual counseling. Father appealed.

## DISCUSSION

### Standard of review

The juvenile court's jurisdictional finding that the minor is a person described in section 300 must be supported by a preponderance of the evidence. (§ 355; Cal. Rules of Court, rule 5.684(f).) "'"When the sufficiency of the evidence to support a finding or order is challenged on appeal, the reviewing court must determine if there is any substantial evidence, that is, evidence which is reasonable, credible, and of solid value to support the conclusion of the trier of fact. [Citation.] In making this determination, all conflicts [in the evidence and in reasonable inferences from the evidence] are to be resolved in favor of the prevailing party, and issues of fact and credibility are questions for the trier of fact. [Citation.]"' [Citation.] While substantial evidence may consist of inferences, such inferences must rest on the evidence; inferences that are the result of speculation or conjecture cannot support a finding. [Citation.]" (*In re Precious D.* (2010) 189 Cal.App.4th 1251, 1258–1259.) "[W]e must accept the evidence most favorable to the order as true and discard the unfavorable evidence as not having

6

sufficient verity to be accepted by the trier of fact. [Citation.]" (*In re Casey D.* (1999) 70 Cal.App.4th 38, 53.)

**Substantial evidence did not support the jurisdictional findings under section 300, subdivision (b)**

Section 300, subdivision (b)(1) provides, in pertinent part, a basis for juvenile court jurisdiction if "[t]he child has suffered, or there is a substantial risk that the child will suffer, serious physical harm or illness, as a result of the failure or inability of his or her parent or guardian to adequately supervise or protect the child . . . or by the inability of the parent or guardian to provide regular care for the child due to the parent's or guardian's mental illness, developmental disability, or substance abuse. . . . The child shall continue to be a dependent child pursuant to this subdivision only so long as is necessary to protect the child from risk of suffering serious physical harm or illness."

"A jurisdictional finding under section 300, subdivision (b) requires: '"(1) neglectful conduct by the parent in one of the specified forms; (2) causation; and (3) 'serious physical harm or illness' to the child, or a 'substantial risk' of such harm or illness." [Citation.]' [Citations.] The third element 'effectively requires a showing that at the time of the jurisdictional hearing the child is at substantial risk of serious physical harm in the future (e.g., evidence showing a substantial risk that past physical harm will reoccur).' [Citation.]" (*In re James R.* (2009) 176 Cal.App.4th 129, 135.) "[T]he use of the disjunctive 'or' demonstrates that a showing of prior abuse and harm is sufficient, standing alone, to establish dependency jurisdiction." (*In re J.K.* (2009) 174 Cal.App.4th 1426, 1435, fn. omitted.) Thus, jurisdiction may be exercised "either based on a prior incident of harm or a current or future risk." (*Id*. at p. 1435, fn. 5.)

In *In re Destiny S.* (2013) 210 Cal.App.4th 999, we observed that the use of drugs, without more, would not support jurisdiction under section 300, subdivision (b). (*Destiny*, at p. 1003.) Instead, DCFS must present evidence of a specific, nonspeculative and substantial risk to the minor of serious physical harm. (*Ibid*.) In that case, the mother tested positive for methamphetamine and marijuana, the 11-year-old minor stated that sometimes she could smell "'the other thing that mother smokes,'" and a prior

petition alleged that the mother used methamphetamine and had left the then one-year-old minor unattended for long periods of time. (*Id*. at p. 1004.) There was no evidence that the minor was at risk of imminent physical harm by secondhand smoke, the nine-year-old prior petition had been closed on the basis that the situation had stabilized, the home was neat and clean, there was no drug paraphernalia in the house, and there was adequate food. Furthermore, there was uncontradicted evidence that the minor was happy and healthy and wanted to go back to the mother. (*Id*. at pp. 1002, 1004.) We concluded that the "record lacks any evidence that Destiny was at risk of suffering physical harm as the result of Mother's use of illegal drugs." (*Id*. at p. 1003.) Accordingly, we reversed the jurisdictional and dispositional orders.

In *In re Rebecca C.* (2014) 228 Cal.App.4th 720, the mother had criminal convictions for theft and drug-related offenses, and the family had a previous child welfare history involving the 14-year old minor's older siblings based on the parents' drug use. (*Id*. at p. 722.) After denying drug use, the mother tested positive for methamphetamine, amphetamine, and marijuana. She subsequently admitted that she used medical marijuana for a pinched nerve, and had recently resumed methamphetamine use. (*Id*. at pp. 722–723.) Although the appellate court determined that substantial evidence supported the juvenile court's finding that the mother suffered from a substance abuse problem, it concluded that the evidence did not support the finding that her substance abuse caused a substantial risk of harm to the minor. The minor denied any physical abuse, did not show any signs of physical abuse, was not fearful of the mother, and was up to date on medical and dental checkups. Also, the family home was clean and stocked with food. (*Id*. at p. 727.)

The appellate court rejected DCFS's argument that "'[t]he risk to a child being cared for by a parent under the influence of such substances is not speculative.'" (*In re Rebecca C.*, *supra*, 228 Cal.App.4th at p. 728.) The appellate court observed that the adoption of such a standard "excises out of the dependency statutes the element of causation and harm," and would mean that physical harm to a child is presumed from a

8

parent's substance abuse. (*Ibid*.) The appellate court thus reversed the juvenile court's jurisdictional orders.

DCFS urges here that Father was a substance abuser with a long history of drug use, drug-related crimes, and spousal abuse, which led to his divorce from Mother. DCFS further asserts that jurisdiction was not based solely on his drug use, but also on Mother's suspicion that Father had relapsed into drug use because he had lost weight and asked the minors to ask her for grocery money. DCFS claims that food was provided by Father to the minors only "because of the paternal aunt's and [M]other's intervention." DCFS also argues that Father had become "increasingly hostile" toward Mother, and failed to enroll "in treatment or even set up a visitation schedule with the children." Citing *In re Drake M.* (2012) 211 Cal.App.4th 754, DCFS contends that Father was a substance abuser and there was "evidence of identified hazards related to [F]ather's substance abuse."

We acknowledge that substantial evidence would support a finding that Father was currently using illicit drugs. Substantial evidence, however, did not establish the required nexus between Father's use of illicit drugs and a substantial risk of serious physical harm or illness to the minors.

There is no evidence that Father used the drugs in the minors' presence; the minors reported that they never observed Father's using drugs. There was no evidence of outward signs of serious physical harm or illness. The minors were up to date on their immunizations, had no bruises, were developmentally on target, and were happy and cheerful. The minors smiled when they said they enjoyed visiting Father.

DCFS cites Father's request to the minors to ask Mother for grocery money, but that evidence does not provide any nexus that such a request would, or did result in any physical harm to the minors. Maternal grandmother underscored this point when she reported that she was concerned that Father asked for grocery money from the minors, but was not concerned about abuse or neglect because he "love[s] the children." The minors, moreover, reported that they always were fed when they visited Father. While DCFS reported that the refrigerator contained spoiled food, DCFS did not report that

9

there was no clean food available for the minors.  Additionally, although Mother made mention of vague "mean and threatening text messages," there was no substantial evidence supporting DCFS's claim that Father's use of drugs caused him to be hostile to Mother, resulting in any risk of serious physical harm or illness to the minors.

Alexis's report of Father's comments that he wanted to move to Mexico is not substantial evidence of serious physical harm or illness.  Alexis denied being depressed or having suicidal thoughts, and expressed sadness only because she wanted to, but could not visit Father.  As noted *ante*, the minors uniformly reported that they were happy with Father, missed visiting him, were well-cared for by him, and were fed when they stayed with him.

Finally, DCFS's claim that Father's failure to enroll in treatment or set up a visitation schedule following the minors' detention, causing Alexis to be anxious, is of no avail in light of our conclusion that the juvenile court's jurisdictional findings under section 300, subdivision (b)(1) were not supported by substantial evidence.

## DISPOSITION

The juvenile court's September 12, 2014 jurisdictional and dispositional orders are reversed.

NOT TO BE PUBLISHED.


BENDIX, J.*

We concur:


CHANEY, Acting P. J.


JOHNSON, J.

---

* Judge of the Los Angeles Superior Court assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.