Filed 12/17/15  In re Jeremiah M. CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| In re JEREMIAH M. et al., Persons Coming Under the Juvenile Court Law. | D068177 |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | |
| Plaintiff and Respondent, | (Super. Ct. No. J518652A-B) |
| v. | |
| S.G., | |
| Defendant and Appellant. | |

APPEAL from orders of the Superior Court of San Diego County, Edlene C. McKenzie, Commissioner.  Affirmed.

Joseph T. Tavano, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas E. Montgomery, County Counsel, John E. Philips, Chief Deputy County Counsel, and Patrice Plattner-Grainger, Deputy County Counsel, for Plaintiff and Respondent.

S.G. appeals orders continuing dependency jurisdiction under Welfare and Institutions Code section 364.[1] She contends the juvenile court erred when it did not dismiss dependency jurisdiction over her children because the initial protective issues—her untreated mental health condition and domestic violence—had been resolved. S.G. argues in view of her demonstrated ability to protect her children and meet their needs, her current medical marijuana use is not a protective issue that would justify the initial assumption of jurisdiction under section 300. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

S.G. is the mother of two children, Jeremiah M., now five years old, and Z.G., now three. Darnell G. is S.G.'s husband and Z.G.'s father.[2] Several months after Z.G.'s birth, Darnell started seeing another woman. In February 2013, while driving with the children in her car, S.G. saw Darnell and his girlfriend in another car. S.G. became angry. She said, "I forgot everyone in the car. I turned around and ran the car into his." Two days after this incident, S.G. attempted suicide and was hospitalized.

S.G. has a medical history of bipolar disorder, visual and auditory hallucinations, self-mutilating behaviors, and suicidal ideation and suicide attempts. She did not consistently take prescribed psychotropic medications. When anxious or depressed, S.G. used marijuana to self-medicate. Her mental health condition was diagnosed as "symptoms consistent with the diagnosis of Bipolar I disorder, most recent episode

---

[1] Further statutory references are to the Welfare and Institutions Code.

[2] The complexities of Jeremiah's paternity are not relevant to the issues raised in this appeal.

2

depressed, severe without psychotic features, and Cannabis dependence, without physiological dependence."

A social worker asked S.G. about her reported marijuana use. S.G. said she had a medical marijuana card for back pain and did not often use marijuana. The social worker asked about a report that S.G. used marijuana every day. S.G. said she did not smoke marijuana every day because she could not afford it. She later said she smoked marijuana to calm her nerves, and to treat migraines, insomnia and back pain, but was not currently using.

In early March 2013, the San Diego County Health and Human Services Agency (Agency) started working with S.G. and asked her to voluntarily place the children with a relative until she stabilized her mental health condition. By the end of the month, the Agency determined the children were at continued risk of harm and filed petitions under section 300, subdivision (b). The juvenile court sustained the petitions, ordered the Agency to provide reunification services to the parents, and placed the children in foster care.

In April, S.G. was found walking down a street, screaming and cutting herself on her wrists with scissors. She was hospitalized under section 5150. S.G. tested positive for opiates, cannabis and benzodiazepines. She admitted to only using marijuana. S.G. was paranoid, angry, aggressive and hostile. Doctors reported her condition as "Bipolar affective disorder by history, most recent episode of manic versus mixed with possible psychotic features, likely cannabis abuse versus dependence." The following week, S.G. collapsed as a result of not eating and dehydration, injuring herself.

The social worker reported that Z.G. was a very easy going baby. She was happy and affectionate. However, Jeremiah had significant problems. He had frequent tantrums, and hit and kicked his caregivers and the other children in the home and at daycare.

In May 2013, Darnell and his girlfriend moved to Las Vegas[3] to avoid S.G., who had repeatedly harassed them. S.G. found Darnell's new address by hacking his email account. S.G. went to Las Vegas and tried to break into Darnell's home while his girlfriend was present. The girlfriend telephoned the police.

In reports prepared for the six-month review hearing, S.G.'s psychologist said S.G. resumed treatment in mid-August after a "brief leave" of approximately one month. She was participating in group and individual therapy, and saw her psychiatrist every four to eight weeks. Her treatment focused on anger, mood and stress management, and maintaining safety. S.G. was prescribed an anti-depressant medication. The psychologist was concerned about possible interactions between marijuana and S.G.'s prescribed medication, and recommended S.G. participate in substance abuse treatment.

S.G. resisted participating in substance abuse treatment, stating that her marijuana use had nothing to do with the reasons her children were in foster care. During a conference call to coordinate services between ParentCare, a substance abuse treatment program, and another provider, S.G. starting screaming at ParentCare staff and left their

---

3    After moving to Las Vegas, Darnell did not maintain contact with the social worker. His whereabouts were unknown to the Agency.

offices. She became belligerent when she tried to return. ParentCare called for police assistance.

In early August, S.G. enrolled in substance abuse and mental health services at Harmony West. She resumed taking prescribed medication and received a certificate of completion for parenting classes. S.G. was unwilling to visit her children at a visitation center, saying the environment was too restrictive. The children's maternal uncle supervised a weekly seven- to eight-hour visit at S.G.'s home. In October, S.G. agreed to have an additional two-hour weekly visit with the children at a visitation center. However, the visitation center refused to transport the children after Jeremiah became angry, took off his sneakers, and threw them at the driver.

In January 2014, Jeremiah was moved to a higher level foster home due to his behavioral issues. When his behavior did not improve, he was moved to another foster home in March. Jeremiah stabilized in this home. When he was in unfamiliar or unpredictable environments, his negative behaviors returned. His behaviors included hitting, spitting and having tantrums.

By January 2014, the physician who was providing medication management services to S.G. reported that she was regularly taking prescribed medication and her mood had stabilized. She consistently denied any current psychiatric symptoms and wanted to discontinue the medication. The physician said he believed that a reasonable plan could be developed to allow S.G. to use nonpharmacologic methods to continue to stabilize her mood.

In reports prepared for the 12-month review hearing, the social worker reported that S.G. was discharged from therapy because of her resistance to formulating treatment goals. Later, she resumed therapy with another therapist. That therapist said S.G. demonstrated insight about meeting the children's needs and her past neglectful behavior. S.G. was receptive to exploring "her dysfunctional thought patterns that in the past had promoted her marijuana use [and] her out of control behaviors when under the influence of marijuana." S.G. tested negative for drugs and continued to participate in outpatient treatment.

Starting in March 2014, S.G. had unsupervised visits with her children, including a day long visit every Saturday. She was playful, engaging and affectionate with them. S.G. implemented good parenting skills, and was protective with her children.

S.G.'s service providers reported that she had made good progress. Although she did not fully accept responsibility for her behavior, she genuinely intended to be a better parent. She attended most of her children's medical exams and developmental evaluations, and demonstrated good parenting skills. Jeremiah was benefitting from weekly one-on-one visits with her. S.G. was discharged from a domestic violence treatment program for excessive absences.

At the end of July, the Agency placed the children on a 60-day trial visit with S.G. S.G. fulfilled the requirements of her individual therapy. She had graduated from her substance abuse treatment program and was attending aftercare services. S.G. continued to participate in services designed to stabilize her finances and housing, and facilitate the children's transition into her care. At the 18-month review hearing in September, the

6

juvenile court returned the children to S.G.'s care under a family maintenance services plan.

In March 2015, the Agency reported that S.G. had appropriate housing and was employed. The children appeared to be thriving at home. S.G. was not participating in an aftercare substance abuse treatment program. She was referred for drug testing twice, but said her job prevented her from testing. S.G. had been managing her mental health condition without medication since September 2014. The social worker recommended termination of jurisdiction.

At the family maintenance review hearing, the juvenile court ordered the Agency to conduct two or more random drug tests on S.G., and continued the hearing. S.G. tested positive for marijuana three times. The Agency changed its recommendation to continued jurisdiction, with S.G. to participate in a drug treatment program and random drug testing.

The juvenile court said one of the important issues in the case was S.G.'s dependence on marijuana. S.G. did not understand that her substance abuse presented a continuing risk to her children, a toddler and a child with significant behavioral issues. The juvenile court ordered S.G. to be reassessed by a substance abuse specialist and comply with any treatment recommendations, and continued jurisdiction over the children.

DISCUSSION

S.G. contends the juvenile court erred in continuing the children's dependency proceedings. She asserts the protective issues in her children's dependency cases arose because of her unstable mental health condition and domestic violence, which were resolved. S.G. acknowledges there were concerns in the reunification period about possible negative interactions between marijuana and her prescribed medications. She argues those concerns were no longer valid because she was managing her mental health condition without medication. S.G. argues there is no current protective risk to her children that would justify continued juvenile court supervision. In support, S.G. cites case law holding that harm to a child cannot be presumed without evidence linking a parent's marijuana use to a protective risk to the child. (*In re Alexis E.* (2009) 171 Cal.App.4th 438, 452; *In re David M.* (2005) 134 Cal.App.4th 822, 829-830; *Jennifer A. v. Superior Court* (2004) 117 Cal.App.4th 1322, 1345-1346 (*Jennifer A.*).) S.G. maintains she had been safely caring for her children for a year, they were happy and healthy in her care, and there is no substantial evidence of any link between her medical marijuana use and any protective risk to her children.

When a dependent child is placed with a parent, the juvenile court is required to hold a review hearing every six months. (§ 364, subd. (a).) At the hearing, the court is required to determine whether continued supervision is necessary: "The court shall terminate its jurisdiction unless the social worker or his or her department establishes by a preponderance of evidence that the conditions still exist which would justify initial assumption of jurisdiction under Section 300, or that those conditions are likely to exist if

8

supervision is withdrawn.  Failure of the parent or guardian to participate regularly in any court ordered treatment program shall constitute prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and that continued supervision is necessary."  (§ 364, subd. (c).)

We review the decision to continue dependency jurisdiction under the substantial evidence test.  (*In re N.S.* (2002) 97 Cal.App.4th 167, 172.)  We do not reweigh the evidence, evaluate the credibility of witnesses, or resolve evidentiary conflicts. (*In re Dakota H*. (2005) 132 Cal.App.4th 212, 228.)

In support of her contention that the juvenile court erred when it did not dismiss jurisdiction, S.G. relies on a number of cases in which the reviewing courts held there was not a sufficient link between a parent's drug use and a protective risk to the child. (*In re James R*. (2009) 176 Cal.App.4th 129, 132 (*James R*.) [in the absence of other risk factors, parent's hospitalization after consuming beer and ibuprofen did not support a finding under section 300, subdivision (b)]; *Jennifer A*., *supra*, 117 Cal.App.4th at p. 1346 [although the parent tested positive for marijuana, no evidence was presented to show that the parent had a substance abuse problem]; *In re Destiny S*. (2012) 210 Cal.App.4th 999, 1003-1005 [evidence of a parent's drug use, without any indication of child abuse or neglect, is not sufficient to support jurisdiction]; *In re Drake M*. (2012) 211 Cal.App.4th 754, 764-765 [parent's medical marijuana use did not support a jurisdictional finding; there was no showing that the parent did not provide regular care to his child due to substance abuse].)

S.G.'s argument is premised on her assertion there is no link between her marijuana use and any protective risk to the children. We do not find her assertion or her argument persuasive. Unlike the cases on which she relies, the record contains substantial evidence to establish a link between S.G.'s marijuana use and a protective risk to her children. Although the record shows that her day-to-day parenting skills were generally good, and had been so from the beginning of the case, S.G. placed the children at great risk as a result of her impulsive and dangerous actions. After the children were removed from her care, S.G. suffered a psychotic episode while under the influence of marijuana. It took her months to stabilize, which she did with medication, therapy, and abstinence from marijuana.

Unlike the parents in *James R*. and *Jennifer A*., S.G.'s substance abuse was not an isolated incident. S.G. was diagnosed with marijuana dependence. S.G.'s therapist worked with S.G. to examine "her out of control behaviors when under the influence of marijuana." Her three positive tests for marijuana and three missed tests prior to the last review hearing indicate that she was frequently using marijuana. The record also shows that when S.G. was anxious or depressed, she used marijuana to self-medicate instead of seeking more effective medication to stabilize her moods. In view of her extensive mental health history and lack of treatment since September 2014, we draw the reasonable inference S.G. was using marijuana to treat depression and anxiety, and the more serious manifestations of her mental health condition could resume, leading to a significant protective risk to the children.

10

Further, S.G. was not participating in a substance abuse treatment aftercare plan and did not comply with random drug tests until again ordered to do so by the juvenile court. S.G. did not complete a domestic violence treatment program. Her failure to participate in court-ordered treatment programs "constitute[s] prima facie evidence that the conditions which justified initial assumption of jurisdiction still exist and continued supervision is necessary." (§ 364, subd. (c).) S.G. did not rebut this presumption.

"The provision of a home environment free from the negative effects of substance abuse is a necessary condition for the safety, protection, and physical and emotional well-being of the child." (§ 300.2) The juvenile court reasonably determined that continued jurisdiction was necessary to avoid a recurrence of the events that brought the children within its jurisdiction. (§ 364, subd. (c).) There is substantial evidence to support the juvenile court's findings.

## DISPOSITION

The orders are affirmed.


O'ROURKE, J.

WE CONCUR:


HUFFMAN, Acting P. J.


HALLER, J.

11